DUGGAN, Executrix, Respondent, v. ARNOLD N. MAY BUILDERS, INC., Appellant.

*November 3—November 29, 1966.*

For the appellant there was a brief by *Morrissy, Morrissy, Sweet & Stowe* of Elkhorn, and oral argument by *Ralph R. Stowe.*

For the respondent there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Richard H. Pfeil.*

HANLEY, J. The following issues are raised on this appeal:

1. Did the trial court abuse its discretion when it consolidated two separate causes of action for purposes of trial only?

2. Was the trial court correct in determining that the architect had contracted only to draft the plans and specifications?

3. Was there sufficient evidence to support the finding of the trial court that contractor May Builders, Inc., was guilty of a breach of contract in failing to perform its work in conformance with standards of workmanship?

Appellant May Builders, Inc., argues that the trial court abused its discretion by improperly consolidating separate causes of action. Here the trial court ordered the separate actions joined for the purposes of trial. This is quite different from holding that the causes of action are to be consolidated into one action. The court in *De Sombre v. Bickel* (1963), 18 Wis. (2d) 390, 399, 118 N. W. (2d) 868, clarified this issue by saying:

"We point out a distinction between the consolidation of two cases for the purpose of trial only and the situation contemplated in sec. 269.05, where two or more actions, which might have been joined, are consolidated into one action. Where actions are consolidated for trial they continue their separate existence and separate judgments are entered. Under sec. 269.05 the two actions become one action."

In the case of *August Schmidt Co. v. Hardware Dealers Mut. Fire Ins. Co.* (1965), 26 Wis. (2d) 517, 523, 133 N. W. (2d) 352, this court held that it was not an abuse of discretion when the trial court consolidated into one trial a cause of action in negligence with a cause of action under insurance liability. The court stated:

". . . the consolidation of cases for the purpose of trial rests largely in the discretion of the trial court and is usually granted in the administration of justice when no prejudice will result from trying the several cases

together. . . . The cases were not merged together in one case but were only tried together, each keeping its own distinctive characteristics and its own separate judgment."

Here, in the *Duggan Case,* the trial court allowed each cause of action to keep its own distinctive characteristics and the court rendered separate judgments.

Had the plaintiff initially only brought suit against Architect Sexton, it is clear Sexton could have interpleaded May Builders, Inc., under sec. 263.15, Stats. It is rather difficult to see how it can be contended that the consolidation of these actions for the purposes of trial constituted an abuse of discretion or was erroneous.

There is no one form of architectural contract. These contracts are the product of the intent of the parties, and it is possible for the architect to limit his duties under the contract. One of the typical forms of agreement for architectural services is one in which a lump-sum payment is made to the architect to draft plans and specifications and where the architect bears no responsibility for supervision of the work project. The oral contract which Architect Sexton entered into with the plaintiff was one which guaranteed Sexton $960 for drafting the plans and specifications. There was no mention concerning supervision nor was there any reference to extra fees for the added duty of supervising. There was no evidence introduced showing that Sexton was ever requested to make supervisory visits or that he ever did. In fact, the defendant, in his pleadings, admitted that he had the duty to supervise all of the work in order that it met the necessary standards of good workmanship.

In preparing the plans and specifications, the architect, Sexton, worked from a survey which was submitted to him by the plaintiff, and the plans and specifications were delivered to the plaintiff in one package and then turned over to the defendant contractor for the construction of the house. The revision of the plans to eliminate

the basement were laid out by the defendant May Builders, Inc., and submitted to Sexton for approval. The revised plan contained a notation "Our layout approved by Sexton if O K by Doc D" and was in Arnold May's handwriting. The evidence seems to preclude any argument that Architect Sexton had a duty to know of the subsoil condition of Duggan's lot. There is evidence to support the fact that Sexton had no knowledge of the water condition and that neither May nor Bruno Strecher, the foreman, passed on any such information to him.

The trial court found that the plaintiff's contract with defendant Sexton was only for the drafting of plans and specifications, that it did not include supervising the construction, and further found that Sexton's duty was not generally breached as defendant May claims.

The trial court's findings on the question of fact cannot be upset on an appeal unless these findings are so wrong as to be against the great weight and clear preponderance of the evidence. *Estate of Perssion* (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465.

The quoted materials on page 8 of the appellant's brief referring generally to the administration of construction contracts, and more specifically to the duties of an architect, are not part of the record and so should not be considered on this appeal. See *Ramminger v. State Highway Comm.* (1963), 22 Wis. (2d) 194, 125 N. W. (2d) 406.

The trial court found that the defendant May Builders, Inc., did not perform the work in conformance with good workmanship as required by the contract. Counsel for appellant does not attack specifically any of the trial court's findings of poor workmanship other than the defect of water in the crawl space.

The evidence showed that water rose in the crawl space to a height where it flooded the furnace and measured eight inches. The water condition in the crawl space is

accounted for in two ways, both involving defects in workmanship on the part of the defendant May. It is undisputed that in the excavation of the foundation the contractor's backhoe severed a drainage tile. The sheared-off tile was the identical tile which subdivider Trinke established as one which was installed by him at the time he developed this subdivision. Its purpose was to run off water from springs which were located on a hill and to the south of the building site. This tile that was sheared off was intercepted by contractor Gavin in his work in installing a tile system which would drain off the water from the crawl space. This was done by running a rod back through this tile and finding that the rod struck the foundation of the footing for the crawl space.

There was testimony that the reason that the water was in the crawl space was that the water, instead of flowing from the springs into the creek, flowed into the crawl space through the intercepted tile. A witness, one Goebel, an architect, testified that defendant May failed to pass on information as to the soil condition to Architect Sexton, also that May failed to inform Sexton of the sheared-off tile system, and that there were no steps taken to reroute the sheared-off tile so that proper drainage would continue.

As for the buckling of the roof, the contract provided for pine boards, and, without authority, defendant May substituted a plywood sheet roofing material held together with soluble glue. The substitution of this soluble glue roofing material caused the roof to buckle and to washboard as a result of the delamination from water that entered the roof area from leaks in the flashing and also from condensation.

Evidence shows that the septic-tank tile was laid to a depth where the septic-tank line was below the waterline.

After the water problem developed in the crawl space, it is undisputed that defendant May in an effort to correct the problem sump-pumped the water out of the crawl space directly into the septic-tank system. As a result, the septic-tank system was damaged, causing effluent from the septic tank to back up into the fixtures in the house.

Defendant May installed a nonsubmersible water pump in a well house separated from the main house, and as a result the water system was not usable in the wintertime due to a freezing of the pump.

There was undisputed testimony that improper flashing around the fireplace caused the roof to leak.

The record in this case shows conclusively that there is credible evidence to support the findings of the trial court in respect to the breach of duty of defendant May Builders, Inc., and the effective cause of these breaches on the damage to the Duggan house.

*By the Court.*—Judgment affirmed.